UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ROSS ADAMS, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | 1:25-cv-00246-LEW |
| | ) | |
| STATE OF MAINE, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Petitioner, pursuant to 28 U.S.C. § 2254, seeks relief from a state court conviction for unlawful sexual contact of a child.  (Petition, ECF No. 1.)  Petitioner argues his attorneys provided ineffective assistance at trial and on appeal.  The State asks the Court to dismiss the petition.  (Response, ECF No. 4.)

After a review of the section 2254 petition, the State's request for dismissal, and the record, I recommend the Court grant the State's request and dismiss the petition.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In November 2014, the State filed a criminal complaint charging Petitioner with unlawful sexual contact of a child under the age of twelve with penetration in violation of 17-A M.R.S. § 255-A(1)(F-1).  Petitioner was indicted on the same charge in January 2015. The trial court granted several requests for continuances, including because the second of three attorneys Petitioner retained died unexpectedly in March 2017.  A two-day jury trial was held in June 2018.  The State's witnesses were the victim and her mother.  The victim was eleven years old at the time of the trial.

The victim's mother testified that she and the victim's father lived together in Massachusetts and coparented until he moved to Florida in 2013. Petitioner moved in with the mother and the victim in the fall of 2013. They moved to Maine in the summer of 2014. Petitioner and the victim's mother were expecting a child in the fall of 2014.

In late September 2014 or early October 2014, the victim reported to her mother that Petitioner had touched her inappropriately. The mother asserted that she was crying when she confronted Petitioner, who denied the allegation. According to the victim, when her mother later confronted Petitioner, he admitted the allegation, and then the mother began crying. Both the mother and the victim testified that the mother subsequently told the victim to pack up her desk at school because they might be leaving their home. The mother gave birth a couple of weeks later, and on October 10, 2014, the victim traveled to Florida to visit her father. She testified that she told her father that Petitioner had been touching her inappropriately. The father contacted Florida's child services agency, which contact led to a recorded forensic interview of the victim.

The victim testified that on multiple occasions when her mother was not in the house or was elsewhere in the house, Petitioner touched her genitals inappropriately. The victim asserted that it began in Massachusetts but mostly occurred after the family moved to Maine. The victim did not recall the details of specific incidents. The victim did recount the details of one incident in the back yard of the house near a stump. She stated that Petitioner digitally penetrated her on that occasion.

Over defense counsel's objection, the trial court allowed the State to admit portions of the recording of the forensic interview as a past recollection recorded exception to the

2

hearsay rule. *See* M. R. Evid. 803(5). Given that ruling, counsel sought to admit most of the remainder of the recording for purposes of impeachment. By agreement of the parties, the recording was played for the jury while the victim was outside the courtroom. In the recording, the victim told the interviewer details about the abuse that had taken place inside the house and said that the last time Petitioner abused her was the day before she left Maine.

The victim remained in Florida and lived with her father. Approximately two weeks after the victim went to Florida, her mother moved back to Massachusetts. The mother recalled an interview with a Maine Department of Health and Human Services (DHHS) employee around the same time during which interview she said that she should have acted when the victim told her about Petitioner.

On cross-examination, defense counsel questioned the victim's mother about the victim's father. The mother described the father as domineering and manipulative. She testified that they were in a custody dispute regarding the victim and that when he found out she was pregnant again, he wanted custody of the victim. On examination by defense counsel, the victim could not remember having said certain things to the forensic interviewer, and she was unable to recall details of the incidents. Counsel questioned the victim about potential inconsistencies between her interview answers and her testimony in court. For example, the victim did not mention during the interview that she and Petitioner were near a stump when one of the incidents occurred as she did at trial. Further, although she testified in court that Petitioner said certain things during the incident, she told the interviewer that Petitioner did not say anything to her during any of the incidents.

3

Defense counsel called the victim's father as a witness during the trial. The father acknowledged that in 2013 and 2014, he made several requests for the mother to let the victim live with him in Florida. Sometime between the move to Maine and the time of the victim's accusations, the father sought an attorney to pursue his parental rights. The father also acknowledged that from the time the victim went to Florida, he had not allowed the victim to visit her mother and had only allowed her to speak with her mother on two occasions. He maintained that he did so on the advice of the expert therapists.

The State argued in closing argument that the victim lacked a motive to fabricate the allegations because she had little understanding of the significance or severity of the allegations at the time she made them. The State argued that it was not plausible that the victim had fabricated, or that the father had coached the victim regarding certain details. The State also argued that several aspects of the subsequent conduct of the victim's mother implicitly corroborated the victim's testimony.

In closing argument, defense counsel emphasized the victim's inability to recall specifics for much of the alleged abuse and that there were inconsistencies regarding some of the details that she provided at trial and in her forensic interview. Counsel also argued that the victim's father was motivated by his desire for custody of the victim, and that the victim desired to please her father. Counsel also questioned the father's version of events by noting that the father did not contact the police or medical professionals and did not contact child services for a couple of days and only after speaking with his attorney. Counsel challenged the reliability of the victim's allegations by citing the portion of the forensic interview where the interviewer asked if the victim would be returning to Maine

4

or staying in Florida, and the victim listed several reasons why she would not be returning to Maine but did not mention Petitioner or the alleged inappropriate touching.

The jury found Petitioner guilty. In October 2018, Petitioner was sentenced to seventeen years in prison with all but ten years suspended, to be followed by 10 years of probation. On appeal, Petitioner argued that (1) it was improper to admit the recording of the forensic interview, (2) his right to confront the witnesses against him had been violated, and (3) there was insufficient evidence to support the guilty verdict; in August 2019, the Law Court affirmed. *State v. Adams*, 2019 ME 132, 214 A.3d 496.

In August 2020, Petitioner filed a pro se state court petition for postconviction relief, which petition was amended multiple times after counsel was appointed. The state court held multiple days of evidentiary hearings between October 2023 and February 2024. The court denied postconviction relief in July 2024. Petitioner sought discretionary review from the Law Court; in February 2025, the Law Court denied the petition for a certificate of probable cause to appeal from the trial court's postconviction decision.

Petitioner subsequently filed this federal § 2254 petition.

**DISCUSSION**

**A.    Legal Standards**

A person in custody pursuant to the judgment of a state court may apply to a federal district court for a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts will not consider habeas claims on the merits, however, unless several threshold requirements are satisfied. For example, a state prisoner must raise all

5

available claims in a single application rather than in successive petitions, 28 U.S.C. § 2244(b), the federal petition generally must be filed within the federal one-year statute of limitations, *id.* § 2244(d), and a petitioner ordinarily must exhaust all available state remedies by "fairly present[ing] [each] claim in each appropriate state court (including a state supreme court with powers of discretionary review)," *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quotation marks omitted).[1]

In addition, a federal court ordinarily may not review a claim that was disposed of in state court "pursuant to an independent and adequate state procedural rule," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedurally defaulted claim can be considered only if: (1) failing to consider it would cause "a fundamental miscarriage of justice" due to new evidence of "actual innocence" showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," *Schlup v. Delo*, 513 U.S. 298, 327 (1995); or (2) "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," *Coleman*, 501 U.S. at 750.

Ineffective assistance of counsel at trial or on appeal can establish cause to set aside a procedural default. *Id.* at 753–54. A petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a

---

[1] To exhaust a postconviction claim fully in Maine, a petitioner must request discretionary review by the Law Court. *See* 15 M.R.S. § 2131.  Because the Law Court's decisions are the final state court adjudications on the merits of each claim, the decisions ordinarily under review in federal district court are the Law Court's orders affirming the decisions of the trial court. However, if the Law Court's decision did not explain the reasons for denying relief, the federal court presumes the Law Court adopted the trial court's reasoning unless the State rebuts the presumption. *See Wilson v. Sellers*, 584 U.S. 122, 125–26 (2018).

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Courts evaluate counsel's decisions from their perspective and knowledge at the time and apply a strong presumption that the attorney acted within the wide range of reasonable professional assistance. *Rivera v. Thompson*, 879 F.3d 7, 12 (1st Cir. 2018).  A "reasonable probability" for purposes of establishing prejudice "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Because the constitutional right to counsel does not extend beyond the direct appeal, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), ineffective assistance in a state postconviction proceeding generally cannot establish cause to set aside a procedural default. *Coleman*, 501 U.S. at 752–55. When a state effectively requires ineffective assistance claims to be raised in a collateral attack rather than a direct appeal, however, the lack of effective assistance during "initial-review collateral proceedings" (but not "other kinds of proceedings") will "establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," provided that the underlying ineffective assistance claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez v. Ryan*, 566 U.S. 1, 14–16 (2012).

When reviewing a habeas claim adjudicated on the merits in state court, a federal court may not grant relief unless (1) the state court decision "was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1); or (2) the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" in state court,

*id.* § 2254(d)(2). A state court's legal conclusion is contrary to or an unreasonable application of federal law "only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Nevada v. Jackson,* 569 U.S. 505, 508–09 (2013) (quotation marks omitted). A federal court's review of a claim adjudicated on the merits in state court is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (interpreting 28 U.S.C. § 2254(d)(1)).

When a federal court considers the merits of a claim that was not adjudicated on the merits in state court (i.e. a procedurally defaulted claim for which the default is excused), a federal court is only permitted to consider evidence beyond the state court record in narrow circumstances. If the petitioner "fail[s] to develop the factual basis of a claim in State court proceedings," the federal court can only consider facts beyond the state court record when the claim is based on a new retroactive rule of constitutional law or newly discovered evidence, and when the further factfinding would demonstrate "by clear and convincing evidence" that "no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2); *see also*, *Shinn v. Ramirez*, 596 U.S. 366, 381–82 (2022).[2]

---

[2] The Supreme Court holds petitioners responsible for failing to develop the record—and thus the stringent restrictions on evidentiary hearings apply—when the failure occurred because of a lack of effective assistance of postconviction counsel, even in circumstances addressed in *Martinez v. Ryan*, (i.e. when the failure occurred in an initial-review collateral proceeding and when the claim involves ineffective assistance of trial counsel). *Shinn*, 596 U.S. at 382.

### B.    Confrontation Clause

Petitioner argues the trial court's decision to admit into evidence the recorded interview of the victim violated the Confrontation Clause[3] because the victim's imperfect memory prevented her from answering many questions on cross-examination.  The federal right to confront witnesses prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).  The Law Court rejected Petitioner's argument regarding the witness's imperfect memory because the declarant was available and testified at trial.  *State v. Adams*, 2019 ME 132, ¶¶ 21–22, 214 A.3d 496, 503.  In general, as the Law Court explained, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [the declarant's] prior testimonial statements."  *Crawford*, 541 U.S. at 59 n.9.

The Confrontation Clause also protects "the right to conduct reasonable cross-examination," *Olden v. Kentucky*, 488 U.S. 227, 231 (1988), but trial courts "retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns

---

[3] Petitioner did not specify whether each ground in the federal petition was intended as an ineffective assistance claim or a different constitutional claim.  I have interpreted most of Petitioner's grounds for relief as ineffective assistance claims because those were the federal claims exhausted in the state court postconviction proceedings.  Ground 15, in which Petitioner raises the confrontation clause issue, is difficult to decipher, but it more closely resembles the federal claim that was exhausted in the direct appeal rather than an ineffective assistance claim because trial counsel objected to the recorded recollection determination.  To the extent that Petitioner intended to raise a different claim regarding the combination of questions refreshing the victim's memory and the recorded recollection, the claim was not fully exhausted because it was not in the discretionary review petition, it is now procedurally defaulted, and it lacks merit.

about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Petitioner does not argue, and the record does not reflect, that the trial court placed unreasonable limits on the scope of cross-examination. The Supreme Court suggested in several pre-*Crawford* cases that a defendant is not denied the opportunity for reasonable cross-examination simply because the witness has poor memory regarding the issues in question, *see United States v. Owens*, 484 U.S. 564, 557–60 (1988), and the Supreme Court did not repudiate that principle in or after *Crawford*.

In sum, Petitioner has failed to establish that the state court's decisions regarding the victim's recorded recollection were contrary to or an unreasonable application of any Supreme Court case.

**C.    Additional Witnesses**

Petitioner contends that his attorneys provided ineffective assistance by failing to investigate and call additional witnesses at trial to testify about character and exculpatory evidence. The state court concluded that Petitioner failed to establish that any of the proposed witnesses were available to testify at trial, that their testimony would have been admissible, or that their testimony would have been favorable to him. (Postconviction Decision at 14.) For example, the state court noted that the rules of evidence regarding character evidence would likely have prohibited the introduction of evidence or testimony from the father's ex-wife about the father's character flaws or other prior bad acts. The state court's reasoning appears sound, and because Petitioner offers very little evidence, beyond his own speculation, regarding the potential testimony of the proposed witnesses,

Petitioner has cited no basis for this Court to conclude that the state court erred when assessing counsel's trial decisions. Even if some of the character evidence would have been admissible, the record does not establish that any of the evidence was sufficient to support a finding that counsel's decision not to offer the evidence constitutes ineffective assistance of counsel.

Petitioner also argues that counsel should have investigated and arranged for expert witnesses to testify at trial. Petitioner identified a few closely related topics for expert testimony: sexual allegations in divorce syndrome, forced confabulation, and false memories. (Postconviction Decision at 11–12.) An expert testified about the topics and parental alienation during the postconviction hearing, but the state court did not find the testimony to be persuasive and noted that the expert's testimony represented developing or emerging areas of study without much precedent in Maine regarding the admissibility of opinions on the subject matters. A review of the caselaw in Maine, other states, and the federal courts supports the state court's conclusion. Few courts have considered the utility of such evidence in comparable circumstances.

Even with the lack of precedent for the use of such testimony, the postconviction record reflects that two of Petitioner's lawyers explored those and related issues with several different experts before declining to pursue them further. (*See* Oct. 12, 2023, Hearing Transcript at 182–91; Jan. 29, 2024, Hearing Transcript at 57–58, 72–73.) Indeed, because other evidence, including the testimony of several trial witnesses, and the parties' closing arguments ensured the jury was aware of the potential for false or coached allegations from children, and because Petitioner has not established that jurors are unable

11

to assess such arguments and evidence without the benefit of an expert in circumstances like those presented in this case, counsel's decision not to call expert witnesses to testify as to those issues does not constitute ineffective assistance of counsel.  Consistent with this assessment, Petitioner cites no comparable cases where the absence of such testimony established an ineffective assistance claim.  In short, Petitioner has failed to show that the state court's conclusion regarding additional witnesses was contrary to or an unreasonable application of *Strickland* or any other Supreme Court case.

**D.    Absence of Physical Evidence**

Petitioner contends that counsel provided ineffective assistance by failing to investigate and introduce evidence of a physical exam of the victim.  Consulting experts told counsel that it seemed unusual that discovery did not include a medical examination of the victim. At some point, counsel found evidence that a physical exam of the victim might have been performed in Florida on October 23, 2014.  Among the documents that counsel received was a note from a Maine DHHS employee and a line in a police report that each reflected that a Florida child services employee had mentioned not only the forensic interview but also a medical examination of the victim. (*See* January 29, 2024, Hearing Transcript at 26, 48–51, 64–65.)  Counsel believed the prosecution was likely not aware of the exam.

The state court concluded that counsel made a reasonable strategic decision not to obtain the results of the examination because he could not have done so without alerting the State and creating the possibility that the results would be used against Petitioner. (Postconviction Decision at 14.)  Experts also told counsel that (1) it would not be unusual

for digital penetration to occur without creating a diagnostic physical injury, so negative exam results are not necessarily helpful, and (2) the State's lack of evidence from a physical exam was arguably a benefit to Petitioner because counsel could raise the absence of physical evidence in his argument, which counsel did during closing arguments.  (*Id.*; January 29, 2024, Hearing Transcript at 45–46.)

Petitioner also contends that counsel should have investigated or introduced comments that Petitioner allegedly overheard from the Maine DHHS employee that the examination results suggested there was "no penetration."  Petitioner's argument is unpersuasive.  Petitioner's account of the Maine DHHS employee's statement would have been inadmissible nested hearsay from either Petitioner or the DHHS employee, (*see* Postconviction Decision at 13), and the advantages and disadvantages of exploring the issue further were the same as those counsel considered when declining to seek the examination results.

Further, Petitioner has not shown that the state court erred in its analysis of the deficient performance prong.  Even if Petitioner had established that counsel should have investigated further and obtained the examination results, Petitioner has failed to establish prejudice.  He has not produced the exam results or shown that the results were favorable to him.  Furthermore, there is evidently no dispute that a result that showed the absence of an injury would have done little if anything to disprove the kind of abuse in this case.  The

13

state court decision, therefore, was not contrary to or an unreasonable application of *Strickland* or any other Supreme Court case.[4]

## E.    Improper Comments

Petitioner argues that counsel provided ineffective assistance by failing to object to what he considers unfairly prejudicial evidence and language used by the State. Petitioner evidently objects to the State's use of the words "fact" and "evidence" during the State's opening statement and closing arguments, but he did not assert the challenge in the trial court, and he does not explain the alleged impropriety in the use of the terms. Petitioner did challenge in the state court counsel's failure to object to the State's reference to other unfavorable allegations against Petitioner, including allegations made by the victim's father. The state court, however, supportably determined that competent counsel could

---

[4] Petitioner argued in the discretionary review petition that he had also raised a due process claim regarding the alleged destruction or suppression of the medical exam results. The claim is likely procedurally defaulted because although the word "due process" appears in one of the petitions, the focus throughout the evidence and arguments was on counsel's decisions, not the State's alleged suppression. Even if the claim was not defaulted or if there was cause to excuse the default, the claim would fail on the merits. "There are three components" of a due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963): "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Petitioner has not established that the evidence was exculpatory or impeaching because the content of the exam results is unknown. Nor has he shown that the State suppressed the medical examination evidence because there is no proof that the State ever obtained the medical exam evidence (beyond what the two state employees noted they had been told, which was disclosed in discovery). Petitioner also failed to establish prejudice for the same reasons discussed above in the context of the ineffective assistance claim, namely, the evidence had little value and carried other risks if Petitioner had tried to introduce it. The Supreme Court has also recognized that the Due Process Clauses sometimes requires the government to take affirmative steps to preserve evidence where the exculpatory value was apparent before it was destroyed, the destruction of which can require the exclusion of evidence that would have been impeached by the missing evidence. *See California v. Trombetta*, 467 U.S. 479, 486–89 (1984). The evidence here, however, was evidently never in the State's possession, the same flaws regarding the limited evidentiary value of the evidence applies in this context, and there would be no reason to suppress the evidence that Petitioner sought to exclude–the forensic interview–because the physical exam occurred nearly two weeks later and would have been independent evidence as opposed to something that undermined the validity of the interview.

have declined to object to the statements and even choose to introduce other such statements the victim's father made to the victim to advance counsel's argument that the victim's father, for personal reasons, attempted to direct the victim's statements and influence the victim's opinion of Petitioner. A fair-minded jurist could reasonably conclude that counsel made a reasonable tactical decision regarding the potential benefits of convincing the jury that the father sought to denigrate Petitioner to the victim, which benefits could only be obtained by allowing the jury to hear the father's negative allegations against Petitioner.

## F.      Procedurally Defaulted Claims

The remaining grounds in the federal petition were not included in the request for discretionary review from the Law Court.[5] Regardless of whether the grounds were raised in the state court, because the grounds were not included in the discretionary review petition, the grounds were not fully exhausted in compliance with the state court's adequate and independent rules for seeking such relief and are thus procedurally defaulted.

Petitioner has not established a basis to obtain relief from the procedural default. Petitioner did not present any newly discovered evidence establishing actual innocence. Because postconviction counsel's decisions at the discretionary review stage do not provide cause to excuse a procedural default, those claims in the federal petition which were raised in the Superior Court but not raised in the discretionary review petition, fail.

---

[5] Grounds 5, 11, 12, 14, 17, 20, 21, and 24 were not raised in either of the state courts. Grounds 3, 4, 7, 8, 13, 16, 18, 23, and 25 were at least arguably raised in the trial level postconviction proceedings but were not raised in the petition for discretionary review from the Law Court.

The claims that were not raised in the trial court postconviction proceedings could potentially be excused under *Martinez* if postconviction counsel was ineffective for failing to raise a substantial claim of ineffective assistance of trial counsel.  For the reasons discussed above, because the claims lack merit, the claims do not fall within the *Martinez* exception.  Accordingly, even if the remaining claims were not procedurally defaulted, they would not entitle Petitioner to habeas relief.[6]

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases.  I recommend the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district

---

[6] Many of the claims fail for the reasons the state court explained, and several other claims are too vague or too undeveloped to assess.  For example, Petitioner alleges that counsel failed to "expos[e] [the victim's father's] provable lies," but Petitioner does not meaningfully describe the alleged lies, identify the evidence that would have refuted them, or demonstrated how the evidence was likely to have altered the outcome.  Other claims fail because the record refutes Petitioner's argument or fails to establish deficient performance or prejudice.  For instance, Petitioner argues that it was improper for so much to occur off the record at side bar or in chambers, but the trial transcripts demonstrate that the side bar and chambers conferences were on the record, which is not unusual and warranted to protect a defendant's rights and to preserve the integrity of the trial.  As another example of an unpersuasive claim, Petitioner contends that counsel should have challenged the Florida child services agency's investigation as one-sided because the investigation did not include interviews of other members of the families of the victim's mother and father, but Petitioner provides no information as to what might have been revealed during the interviews.

court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 13th day of April, 2026.